UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SARA HELLWEGE,

      Plaintiff,

v.                    Case No. 8:14-cv-1576-T-33AEP

TAMPA FAMILY HEALTH CENTERS,
and CHAD L. LINDSEY,

      Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Chad L. Lindsey's Motion to Dismiss the Amended Complaint and Memorandum of Law (Doc. # 43), filed on February 18, 2015, and Defendant Tampa Family Health Center's (TFHC) Motion to Dismiss Plaintiff's Amended Complaint (and Incorporated Memorandum of Law in Support) (Doc. # 45), filed on February 19, 2015. Plaintiff Sara Hellwege filed a response in opposition to the Motions on March 4, 2015 (Doc. # 46), and March 5, 2015 (Doc. # 47), respectively. Upon due consideration, the Motions are granted in part.

## I.  **Factual Background**

When Hellwege initiated this action, on June 27, 2014, she was about to graduate from Frontier Nursing University and take her board examinations to become a "licensed advanced

practice nurse" in the state of Florida. (Doc. # 41 at ¶¶ 10-11). Hellwege identifies herself as a Christian. (Id. at ¶ 13). Hellwege believes "in the inherent dignity of human life from the point of conception/fertilization." (Id.). "Consistent with these strongly-held religious beliefs and moral convictions, Ms. Hellwege possesses beliefs against prescribing hormonal contraceptives in certain circumstances, which she believes have the potential to act in a manner potentially threatening the lives of embryos after their conception/fertilization." (Id. at ¶ 14). As part of her exercise of these beliefs, Hellwege is a member of the American Association of Pro-Life Obstetricians and Gynecologists (AAPLOG). (Id. at ¶ 15).

In April of 2014 — as well as on other dates – TFHC advertised at least four open positions for certified nurse-midwives at its various locations in the Tampa, Florida area. (Id. at ¶ 19). The United States Department of Health and Human Services' Health Resources and Services Administration likewise advertised these positions on its website. (Id. at ¶ 20). Hellwege submits that she was eligible to apply for these positions given her "then-pending and now completed graduation, examination, and certification process." (Id. at ¶ 21).

2

On April 28, 2014, Hellwege emailed Lindsey of TFHC's Human Resources Department to inquire whether the positions were still open and attached her resume for his review. (Id. at ¶¶ 22-23). This exchange culminated in a May 13, 2014, email from Lindsey which stated: "Good morning. Due to the fact that we are a Title X organization[1] and you are an [sic] member of AAPLOG, we would be unable to move forward in the interviewing process. An [sic] unfortunately, we do not have any positions for antepartum & laborist only." (Id. at ¶ 27). That same day, Hellwege responded to Lindsey to clarify that she was not only seeking an antepartum and laborist position but would also "accept a position including postpartum and well woman/preventative care as well as antepartum and laborist care, consistent with her religious beliefs." (Id. at ¶ 28). Hellwege then asked whether she would be able to move forward in the application process in light of this clarification. (Id.). Lindsey never responded. (Id. at ¶ 29). Hellwege contends that she was refused the opportunity to continue in the application process (Id. at ¶ 30), but the position remained open, as TFHC "continued to seek

---

[1]    TFHC receives part of its funding from Title X of the Public Health Service Act. See 42 U.S.C. § 300.

applicants" following Hellwege's denial of the opportunity to interview for employment. (Id. at ¶ 85).

Hellwege initiated this action on June 27, 2014. (See Doc. # 1). On February 4, 2015, Hellwege timely filed an Amended Complaint with the written consent of Defendants, pursuant to Fed. R. Civ. P. 15(a)(2). (Doc. # 41). Hellwege contends that Lindsey – and in turn TFHC – refused to allow her to continue in the application process for any of the certified nurse midwife positions, due to her "membership in AAPLOG and her associated religious and moral beliefs against participating in certain prescriptions of some hormonal contraceptives." (Id. at ¶¶ 30-31). Hellwege asserts that this refusal violates federal and state law. (Id. at ¶¶ 32, 46-49). In particular, the Amended Complaint lists the following claims for relief:

    (I)   Violation of 42 U.S.C. § 300a-7;

    (II)  Violation of Fla. Stat. § 381.0051(5);[2]

---

[2]    Fla. Stat. § 381.0051(5) states: "The provisions of this section shall not be interpreted so as to prevent a physician or other person from refusing to furnish any contraceptive or family planning service, supplies, or information for medical or religious reasons; and the physician or other person shall not be held liable for such refusal."

(III) Violation of Fla. Stat. § 390.0111(8);[3]

(IV)  Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (TFHC only); and

(V)  Violation of Florida Civil Rights Act of 1992, Fla. Stat. Ann. § 760.01 et seq. (TFHC only).

(See Id.). Lindsey filed a Motion to Dismiss on February 18, 2015. (Doc. # 43). Thereafter, TFHC filed a Motion a Dismiss on February 19, 2015. (Doc. # 45). Both Motions are ripe for the Court's review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all of the factual allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).

---

[3]    Fla. Stat. § 390.0111(8) states: "Nothing in this section shall require any hospital or any person to participate in the termination of a pregnancy, nor shall any hospital or any person be liable for such refusal. No person who is a member of, or associated with, the staff of a hospital, nor any employee of a hospital or physician in which or by whom the termination of a pregnancy has been authorized or performed, who shall state an objection to such procedure on moral or religious grounds shall be required to participate in the procedure which will result in the termination of pregnancy. The refusal of any such person or employee to participate shall not form the basis for any disciplinary or other recriminatory action against such person."

5

Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

In accordance with Twombly, Federal Rule of Civil Procedure 8(a) calls "for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)(quoting Twombly, 550 U.S. at 570). A plausible claim for relief must include "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

III. **Count I**

Count I of Hellwege's Amended Complaint alleges violations of 42 U.S.C. § 300a-7 (collectively known as the "Church Amendments" after former Senator Frank Church). (See Doc. # 41). Specifically, Hellwege contends that TFHC and Lindsey violated section (d) of the Church Amendments "when they refused to allow [Hellwege] to be considered or continue in the application process for certified nurse midwife positions at TFHC, based on her religious or moral objections to participate in certain services, and/or based on her membership in AAPLOG in connection with those convictions." (Id. at ¶ 65). Further, Hellwege contends that TFHC and Lindsey have violated sections (c)(1) and (c)(2) of the Church Amendments "by discriminating against [Hellwege] due to her religious and moral objection to performing or assisting in the performance of certain activities specified herein." (Id. at ¶ 67).

A. **What are the Church Amendments?**

The "conscience provisions" contained in the Church Amendments "were enacted at various times during the 1970s to make clear that receipt of Federal funds did not require the recipients of such funds to perform abortions or sterilizations." Regulation for the Enforcement of Federal

7

<u>Health Care Provider Conscience Protection Laws</u>, 76 FR 9968-
02 (Feb. 23, 2011). In this case, the Court is called upon to
determine whether sections (c)(1), (c)(2), or (d) of the
Church Amendments contain language that confers on
individuals, such as Hellwege, a private right of action.
These sections state as follows:

> (c) Discrimination prohibition.
> (1) No entity which receives a grant, contract,
> loan, or loan guarantee under the Public Health
> Service Act, the Community Mental Health Centers
> Act, or the Developmental Disabilities Services and
> Facilities Construction Act . . . may--
>     (A) discriminate in the employment, promotion,
> or termination of employment of any physician or
> other health care personnel, or
>     (B) discriminate in the extension of staff or
> other privileges to any physician or other health
> care personnel,
>     because he performed or assisted in the
> performance of a lawful sterilization procedure or
> abortion, because he refused to perform or assist
> in the performance of such a procedure or abortion
> on the grounds that his performance or assistance
> in the performance of the procedure or abortion
> would be contrary to his religious beliefs or moral
> convictions, or because of his religious beliefs or
> moral convictions respecting sterilization
> procedures or abortions.
> (2) No entity which receives after the date of
> enactment of this paragraph a grant or contract for
> biomedical or behavioral research under any program
> administered by the Secretary of Health, Education
> and Welfare may—-
>     (A) discriminate in the employment, promotion,
> or termination of employment of any physician or
> other health care personnel, or

(B) discriminate in the extension of staff or other privileges to any physician or other health care personnel,

because he performed or assisted in the performance of any lawful health service or research activity, because he refused to perform or assist in the performance of any such service or activity on the grounds that his performance or assistance in the performance of such service or activity would be contrary to his religious beliefs or moral convictions, or because of his religious beliefs or moral convictions respecting any such service or activity.

(d)  **Individual rights respecting certain requirements contrary to religious beliefs or moral convictions.** No individual shall be required to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions.

42 U.S.C. § 300a-7(c)(1)-(d)(emphasis added).

### B.   Do the Church Amendments Provide a Private Right of Action?

TFHC and Lindsey argue that Count One of the Amended Complaint is subject to dismissal because the Church Amendments do not provide Hellwege with a private right of action. (Doc. # 43 at 2-7; Doc. # 45 at 7-13). As evidenced by their plain language, the Church Amendments do not expressly set forth a private right of action to enforce their terms. See 42 U.S.C. § 300a-7. Accordingly, the Court's

analysis turns to whether the statute creates an implied private right of action.

In Cannon v. University of Chicago, 441 U.S. 677, 717 (1979), the Court noted, "When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights. But the Court has long recognized that under certain limited circumstances the failure of Congress to do so is not inconsistent with an intent on its part to have such a remedy available to the persons benefitted by its legislation." Id. There, the Court determined that "Title IX presents the atypical situation in which all of the circumstances that the Court has previously identified as supportive of an implied remedy are present." Id. (emphasis in original).

This Court takes heed of the High Court's admonition that an implied right of action is "atypical." Id. It is the exception, rather than the rule, and this Court should only find that an implied private right of action exists if the statute in question manifests Congress' intent to create both a private right and a private remedy. Alexander v. Sandoval, 532 U.S. 275, 286 (2001).

### 1.   The Church Amendments Create a Private Right

In <u>Cenzon-DeCarlo v. Mount Sinai Hospital</u>, 626 F.3d 695, 699 (2d Cir. 2010), a case with troubling facts, the court determined that section (c) of the Church Amendments does not confer a private right of action. <u>Id.</u>  There, an operating room nurse was forced to participate in the performance of a late term abortion against her will and with her employer's knowledge that she was morally opposed to abortions. <u>Id.</u> at 696.  The court acknowledged that "there may be some colorable evidence of intent to confer or recognize an individual right" in section (c) of the Church Amendments, but that "there is *no* evidence that Congress intended to create a right of action." <u>Id.</u> at 698 (emphasis in original).  That court also remarked that the Church Amendments "may be a statute in which Congress conferred an individual right without a remedy." <u>Id.</u> at 698-99.

This Court agrees with <u>Cenzon-Decaro</u>'s analysis concerning the existence of "colorable evidence" that section (c) of the Church Amendments recognizes individual rights.[4] <u>Id.</u> at 698.  This Court's own reading of section (c) shows

---

[4]  The plaintiff in the <u>Cenzon-Decaro</u> limited her Church Amendments claim to section (c), and did not seek redress under section (d) of the Church Amendments.

that it protects "physicians" and "other health care personnel" from employment discrimination based on that individual's performance of abortions and other procedures, that individual's refusal to perform abortions and other procedures, or that individual's "religious beliefs or moral convictions respecting sterilization procedures or abortions." 42 U.S.C. § 300a-7(c).  This language creates an individual right in physicians and other health care employees to be free from employment discrimination under the circumstances delineated in the statute.

In addition to section (c), Hellwege also seeks redress under section (d) of the Church Amendments, in which Congress specifically described "**Individual rights**" stemming from "religious beliefs or moral convictions." 42 U.S.C. § 300a-7(d)(emphasis added).

The Court rejects TFHC's argument that "the heading 'Individual Rights' in the Public Law passed by Congress . . . does not confer individual rights, it merely 'sheds light on some ambiguous word or phrase in the statute itself.'" (Doc. # 45 at 8, n.5)(quoting Whitman v. Am. Trucking Assocs., 531 U.S. 457, 483 (2001)).  Although the Court agrees that it is the substance of a statute, rather than its title, that may confer individual rights, in this case, section (d) of

the Church Amendments proclaims that "No individual shall be required to perform or assist in the performance" of actions "contrary to his religious beliefs or moral convictions." 42 U.S.C. § 300a-7(d). The language of this section, as well as its title of "Individual Rights" strongly suggests that Congress intended to create an individual right.

Upon due reflection, the Court is satisfied that the Church Amendments recognize important individual rights. The Court thus turns to the more difficult question of whether there is any evidence of Congressional intent to create a private remedy for the enforcement of the Church Amendments.

## 2. The Church Amendments do not Create a Private Remedy

The Supreme Court's discussion of when it is appropriate to imply a private right of action is far from static. In Cort v. Ash, 422 U.S. 66 (1975), the Court enunciated its four part test for determining whether a statute impliedly confers a private right of action. The Court in Cannon evaluated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, under the Cort factors and determined that such statute did confer a private right of action. 441 U.S.

at 717.[5]   In <u>Cannon</u>, the Court stated that it "has never refused to imply a cause of action where the language of the statute explicitly conferred a right directly on a class of persons that included the plaintiff in the case." <u>Id.</u> at 693.

However, the Court subsequently decided <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 575 (1979)("The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action") and <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 24 (1979)("The dispositive question remains whether Congress intended to create any such remedy."). <u>See also</u> <u>Thompson v. Thompson</u>, 484 U.S. 174, 189 (1988)(Scalia, J., concurring)(<u>Cort</u>'s four factor test was "effectively overruled" in <u>Touche Ross</u> and <u>Transamerica</u> by the Court's conversion of "one of its four factors (congressional intent) into *the determinative factor*.")(emphasis in original).

The Court further refined the relevant inquiry in <u>Northwest Airlines, Inc. v. Transport Workers Union of America</u>, 451 U.S. 77, 94 (1981), explaining, "unless []

---

[5] In relevant part, Title IX states, "No person in the United states shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." In Sandoval, the Court crystalized that "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create *not just a private right but also a private remedy*." 532 U.S. at 286 (citations omitted) (emphasis added). Without a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 286-87. Finally, in Gonzaga University v. Doe, 536 U.S. 273, 289, n.7 (2002), the Court explained that, in determining whether a statute creates a private right of action, there is "no presumption of enforceability merely because a statute speaks in terms of rights." (internal citation omitted).

In Gonzaga, the Court determined that it was not appropriate to infer a private right of action under the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g, a statute prohibiting the unauthorized disclosure of educational records by educational entities receiving federal funding. While the Gonzaga Court considered several factors that weighed against finding an

15

implied right of action, the Court highlighted that the mechanism Congress chose for the enforcement of FERPA involved administrative review procedures under the Secretary of Education. Specifically, the Gonzaga Court remarked:

> Our conclusion that FERPA's nondisclosure provisions fail to confer enforceable rights is buttressed by the mechanism that Congress chose to provide for enforcing those provisions. Congress expressly authorized the Secretary of Education to deal with violation of the Act and required the Secretary to establish or designate a review board for investigating and adjudicating such violations. Pursuant to these provisions, the Secretary created the Family Policy Compliance Office (FPCO) to act as the Review Board required under the Act and to enforce the Act with respect to all applicable programs. The FPCO permits students and parents who suspect a violation of the Act to file individual written complaints. If a complaint is timely and contains required information, the FPCO will initiate an investigation, notify the educational institution of the charge, and request a written response. If a violation is found, the FPCO distributes notice of factual findings and a statement of the specific steps that the agency or institution must take to comply with the FERPA.

Id. at 2278-79. (internal citations and emphasis omitted).

A similar provision exists with respect to enforcement of the Church Amendments. The United States Department of Health and Human Services's regulations are set forth in 45 C.F.R. § 88. Specifically, 45 C.F.R. § 88.1 states that "[t]he purpose of this part is to provide for the enforcement

of the Church Amendments. . . ." In order to effect this

purpose:

> The Office for Civil Rights (OCR) of the Department
> of Health and Human Services is designated to
> receive complaints based on the Federal health care
> provider conscience protection statutes. OCR will
> coordinate the handling of complaints with the
> Departmental funding component(s) from which the
> entity, to which a complaint has been filed,
> receives funding.

45 C.F.R. § 88.2. In addition, the governing Regulations

provide that "[e]nforcement of the statutory conscience

protections will be conducted by staff of the Department

funding component, in conjunction with the Office for Civil

Rights, through normal program compliance mechanisms." 76

F.R. 9968, at 9972. To that end, "if the Department becomes

aware [of] activities that may violate statutory conscience

protections," the Department will undertake efforts to assist

the violating entity to "come into compliance." Id. But, if

"compliance is not achieved, the Department will consider all

legal options, including termination of funding." Id. As was

the case in Gonzaga, this Court finds that "these

administrative procedures squarely distinguish this case from

[cases] where an aggrieved individual lacked any federal

review mechanism and further counsel against our finding a

congressional intent to create individually enforceable private rights." 536 U.S. at 289-90.

Upon careful consideration, this Court declines Hellwege's invitation to engage in the "hazardous enterprise" of "implying a private a right of action on the basis of congressional silence." Touche Ross & Co., 442 U.S. at 576. The Court harkens back to Cannon's admonition that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." 441 U.S. at 688. In that case, numerous indicia of Congressional intent to support a private right of action under Title IX existed, including "the scope and purpose of Title IX and its place within 'the civil rights enforcement scheme.'" Id. No similar considerations are present here. In the absence of Congressional intent to support a private remedy for violation of the Church Amendments, the Court finds that no private right of action exists under the Church Amendments.

The Court notes that other federal courts addressing this issue have reached the same conclusion. See Cenzon-DeCarlo, 626 F.3d at 698 ("While there may be some colorable evidence of intent to infer or recognize an individual right, there is *no* evidence that Congress intended to create a right

*of action*.") (emphasis in original); <u>Nead v. Bd. of Trs. of E. Ill. Univ.</u>, No. 05-2137, 2006 WL 1582454, at *5 (C.D. Ill. June 6, 2006) (finding on a motion to dismiss that the Church Amendments do not confer a private right of action upon consideration of sections (b) through (d)); <u>Moncivaiz v. Dekalb Cnty.</u>, No. 03 C 50226, 2004 WL 539994, at *3 (N.D. Ill. Mar. 12, 2004) (holding at the motion to dismiss stage that no private right of action exists under the Church Amendments); <u>Anspach v. City of Phila.</u>, 630 F. Supp. 2d 488, 496 (E.D. Penn. 2008) ("Although the Act prohibits discrimination in the employment, promotion or transfer of any physician or other health care professional . . . on the basis of their religious or moral convictions . . . [the court] find[s] no provision of an express, private means of redress in the statute itself.") (citations omitted).

Thus, even accepting Hellwege's allegations as true, as this Court must do at this procedural juncture, the Court dismisses Count I because the Court has determined that Congress did not intend to confer a private right of action in the Church Amendments. Furthermore, the Court finds that Hellwege is not entitled to injunctive relief. See <u>Davis v. Passman</u>, 442 U.S. 228, 239 (1979) ("the question whether a litigant has a 'cause of action' is analytically distinct and

prior to the question of what relief, if any, a litigant may be entitled to receive."). Therefore, TFHC and Lindsey's Motions are granted as to Count I, and as a result, Count I is dismissed.

## IV.   Counts IV and V

Count IV of the Amended Complaint sets forth a claim against TFHC under Title VII for religious discrimination. (Doc. # 41 at 12). As stated by Hellwege, "Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2000 *et seq.* makes it unlawful for an employer to discriminate against an employee on the basis of religion." (Id. at ¶ 78). Count V sets forth an analogous claim under the Florida Civil Rights Act. Both statutes make it unlawful to fail or refuse to hire an individual on the basis of religion. See 42 U.S.C. § 2000e-2(a); see also Fla. Stat. Ann. § 760.10(1)(a).[6]

TFHC argues that Hellwege "fails to allege that she was qualified for the position, that she suffered an adverse

---

[6] The Florida Civil Rights Act is patterned after Title VII. O'Loughlin v. Pinchback, 579 So. 2d 788, 791 (1st DCA 1991). "Pursuant to Florida's longstanding rule of statutory construction that recognizes that state laws patterned after federal statutes must be interpreted as if they were one, the Florida law is accorded the same construction as Title VII." Greenfield v. City of Miami Beach, Fla., 844 F. Supp. 1519, 1524 (S.D. Fla. 1992) aff'd sub nom. Greenfield v. City of Miami Beach, 20 F.3d 1174 (11th Cir. 1994).

employment action, or that she was treated less favorably than a similarly situated individual outside of her protected class." (Doc. # 45 at 20). However, TFHC's Motion relies on the standard for disparate treatment claims brought under Title VII (Id.), whereas Hellwege brings Counts IV and V under a failure-to-hire theory. (See Doc. ## 41, 45).

To set forth a failure-to-hire claim, Hellwege must allege that: "(1) she was a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class." E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1273 (11th Cir. 2002).

In the present matter, Hellwege contends that – as a Christian – she is a member of a protected class who applied and was qualified for the position of certified nurse-midwife at TFHC. (Doc. # 41 at ¶¶ 23-25, 82-83). Hellwege alleges that she "was denied employment due to her religious beliefs." (Id. at ¶ 84). Hellwege further submits that the position remained open, as TFHC "continued to seek applicants" following Hellwege's denial of employment. (Id. at ¶ 85). Although noting TFHC's argument that Hellwege was not

qualified for the position (Doc. # 45 at 21-22), at this stage of the proceedings, the Court accepts as true the factual allegations included in the Amended Complaint. Therefore, the Court finds that Hellwege has adequately alleged a prima facie case of employment discrimination under Title VII and the Florida Civil Rights Act to survive a motion to dismiss. Accordingly, TFHC's Motion is denied as to Counts IV and V.

**V.    Counts II and III**

In Counts II and III of her Amended Complaint, Hellwege alleges violations of Fla. Stat. § 381.0051(5) and Fla. Stat. § 390.0111(8). However, after an independent review, the Court finds that Hellwege's attempt to bring a private cause of action under either statute presents a novel issue of state law. Therefore, under these circumstances, the Court considers whether to exercise supplemental jurisdiction, pursuant to the two-part test set forth in Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1563 (11th Cir. 1994).

First, while a court ordinarily must exercise supplemental jurisdiction, it may chose not to when, for example, "the state claim raises a novel or complex issue of State law." Id. (citing 28 U.S.C. § 1367(c)). Second, once a court decides if any of the § 1367(c) factors apply, it must

then decide whether or not to exercise jurisdiction in consideration of the judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together. Id. at 1569.

In the present matter, the Court finds that whether Hellwege has alleged a private cause of action under either statute presents a novel and complex issue of state law. Furthermore, the Court notes that "judicial economy and fairness to the parties are not served if the Court makes several essentially first-impression decisions about novel and complex state law issues." Demauro v. Limo, Inc., No. 8:10-cv-413-T-33AEP, 2010 WL 2471501, at *5 (M.D. Fla. June 17, 2010) (quoting Kwasnik v. Charlee Family Care Servs. of Cent. Fla., Inc., No. 6:08-cv-926-Orl-31KRS, 2009 WL 1607809, at *17 (M.D. Fla. May 19, 2009)). As explained in United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), "Needless decisions of state law should be avoided both as matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law."

Accordingly, the Court declines to exercise supplemental jurisdiction over Hellwege's claims under these statutes. Therefore, the Motions are granted to the extent that Counts II and III are dismissed without prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendants Tampa Family Health Centers and Chad L. Lindsey's Motions to Dismiss (Doc. ## 43, 45) are **GRANTED in part as follows.**

(2) Count I of the Amended Complaint is **dismissed with prejudice.**

(3) Counts II and III of the Amended Complaint are **dismissed without prejudice,** as the Court declines to exercise supplemental jurisdiction over these Counts.

(4) Defendant Tampa Family Health Centers' answer to Counts IV and V of the Amended Complaint is due on or before April 30, 2015.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of April, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record